IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THE VERIZON EMPLOYEE** | § | |
| **BENEFITS COMMITTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:05-CV-2120-L** |
| | § | |
| **JOHN HEINLEIN**, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before this court is Defendant John Heinlein's Motion to Dismiss for Lack of Jurisdiction, or, Alternatively, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Motion to Dismiss"), filed May 23, 2006. After careful consideration of the motion, briefs, appendices, response, reply, record and applicable law, the court **denies** Defendant's Motion to Dismiss for Lack of Jurisdiction, but **grants** Defendant's alternative Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the District of Maryland.

## I.  BACKGROUND

This is a suit to recover an alleged overpayment of pension benefits under a plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* ERISA § 3(1), 29 U.S.C. 1002(1). Plaintiff The Verizon Employee Benefits Committee ("Verizon") filed this action on October 28, 2005, against Defendant John Heinlein ("Heinlein"). Heinlein worked for Verizon, its subsidiaries or predecessor corporations, from August 23, 1965, until he retired on December 30, 1995, at which time Heinlein received a lump sum pension distribution. Verizon's First Amended

Complaint Seeking Recovery of Overpayment, Constructive Trust and Injunctive Relief ("Verizon Complaint") at 2. Verizon rehired Heinlein on April 29, 1996, and Heinlein retired a second time on June 8, 2002. *Id.* It is Verizon's lump sum pension distribution to Heinlein following this second retirement that forms the basis for the current dispute. According to Verizon, Heinlein was entitled to receive a lump sum retirement benefit of $204,923.38, based on his participation in the ERISA-covered pension plan ("Plan") managed by Verizon. *Id.* Instead, Verizon asserts it paid Heinlein a lump sum of $390,749.89 in September 2002, due to an "administrative error." *Id.* Verizon now seeks equitable recovery of the $185,826.51 it believes it has overpaid Heinlein, including a preliminary injunction prohibiting Heinlein from using the alleged overpayment and a constructive trust on that amount specifically traceable to the benefit payment. *Id.* at 4-5.

Defendant Heinlein is a lifelong Maryland resident who has never lived in or visited Texas. Affidavit of John Heinlein ("Heinlein Affidavit") at 1, 3. Heinlein's Motion to Dismiss contends that he, therefore, lacks sufficient minimum contacts with the state for this court to exercise personal jurisdiction over him. Motion to Dismiss at 1. Additionally, Heinlein contends that ERISA's national service of process provision does not apply in this case because Verizon has failed to state an equitable claim within the scope of section 502(a)(3) of ERISA. *See* 29 U.S.C. §§ 1132(a)(3), (e)(2); Brief in Support of Defendant's Motion to Dismiss or, Alternatively, to Transfer Venue ("Heinlein's Brief") at 2-6. In the alternative, Heinlein argues that this case should be transferred to the District of Maryland for the convenience of parties and witnesses, and in the interest of justice, under 28 U.S.C. § 1404(a). Finally, Heinlein included an argument that Verizon's Complaint fails to state a claim that is not barred on its face by the applicable statute of limitations. For the reasons stated below, the court finds that it may exercise personal jurisdiction over Heinlein

under the jurisdictional provisions of 29 U.S.C. § 1132(e)(2), but that the interest of justice and the convenience of the parties and witnesses would be better served if this case is tried in Maryland. Therefore, the court **denies** Heinlein's Motion to Dismiss and **grants** Heinlein's alternative Motion to Transfer Venue.

## II.  MOTION TO DISMISS FOR LACK OF JURISDICTION

### A.  Legal Standards

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a *prima facie* case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1985); *Suart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a *prima facie* case that personal jurisdiction is proper, *id.*, and proof by a preponderance of the evidence is not required. *Int'l Truck and Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003) (*citing WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his *prima facie* case, the burden then shifts to the defendant to present a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356-57 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas Turbines*, 9 F.3d at 418 *(citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). As noted above, once minimum contacts are established, a defendant must present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In fact, only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *See Asahi*, 480 U.S. at 116;

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

In this case, 29 U.S.C. §1132, which governs the administration and enforcement of ERISA benefits plans, provides the requirements for service of process and venue:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). These provisions amount to a congressionally legislated "nationwide service of process" in ERISA actions, such that the relevant personal jurisdiction inquiry becomes whether the defendant has had minimum contacts with the United States. *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 825 (5th Cir. 1996) (citing *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994)). Heinlein's Brief points to a circuit split, of which this court is aware, in that other federal courts have disagreed with such a broad exercise of personal jurisdiction in cases involving nationwide service of process provisions. *See, e.g., Republic of Panama v. BCCI Holdings(Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997); *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 528 (6th Cir. 2000). The Eleventh Circuit, in rejecting the Fifth Circuit's approach, held that the Fifth Amendment still requires a personal jurisdiction inquiry to "comport with traditional notions of fair play and substantial justice." *Id.* "Therefore, even when a defendant resides within the United States, courts must ensure that requiring a defendant to litigate in the plaintiff's chosen forum is not unconstitutionally burdensome." *Id.*

The Fifth Circuit, in fact, adopted the same sentiment in the precise case where it held that ERISA's nationwide service of process provision expands the minimum contacts analysis to one encompassing the entire United States. *See Bellaire*, 97 F.3d at 826. The court stated:

> We fail to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions . . . "Because the personal jurisdiction requirement is a function of the individual liberty interest, the proper focus should be protecting an individual's liberty interest in avoiding the burdens of litigating in a distant or inconvenient forum.  Requiring that the individual defendant in a national service of process case only reside somewhere in the United States does not protect this interest."

*Id.* (quoting J. Garza's dissent in *Busch*, 11 F.3d at 1259).  The court explained that its holding in *Bellaire* was controlled by its prior holding in *Busch*, interpreting a "nationwide service of process" provision in the 1934 Securities Exchange Act.  "Thus, though we follow *Busch* today and find that the district court properly exercised personal jurisdiction over Blue Cross in this case, we do so with grave misgivings regarding the authority upon which we rely."  *Id.*  Likewise, this court is bound to follow the Fifth Circuit's reluctant holding from *Bellaire* that, in ERISA cases, so long as a defendant has established minimum contacts with the United States, he is subject to the personal jurisdiction of this court, and may be served with process anywhere the statute permits.  As the Fifth Circuit noted, "a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled *en banc* or by the United States Supreme Court."  *Id.* at 826 n.3. (internal citations omitted).  No Supreme Court decision or an *en banc* decision of the Fifth Circuit has overruled *Busch* or *Bellaire*.

## B.  Analysis

### 1.  Minimum Contacts

Applying the legal standards explained above, the court determines that ERISA's national service of process provision permits this court to exercise personal jurisdiction over Defendant Heinlein, so long as he has had sufficient minimum contacts with the United States.  The court finds that Heinlein's lifelong residency within the United States establishes the necessary minimum

contacts, such that an exercise of personal jurisdiction over him would comport with constitutional due process requirements. Defendant Heinlein has not presented a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." Accordingly, Heinlein's motion to dismiss for lack of personal jurisdiction on the ground that he lacks sufficient minimum contacts with Texas is **denied**.

## 2. Equitable Claim under ERISA

Heinlein next argues that ERISA's national service of process provision does not apply in this case, because Verizon has not stated an equitable claim within the scope of § 502(a)(3) of ERISA. *See* 29 U.S.C. §§ 1132(a)(3), (e)(2). Section 502(a)(3) of ERISA permits a "participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." § 1132(a)(3). The Supreme Court defines "equitable relief" in the context of § 502(a)(3) as "those categories of relief that were *typically* available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). Thus, a plaintiff in *equity* may not seek money damages in the classic forms of *legal* relief that would impose personal liability on a defendant for money owed, or would compel payment or specific performance on a contract to pay a specific sum of money. *See Knudson*, 534 U.S. at 210. The Supreme Court, however, recognized a narrow avenue for relief in equity :

> [A] plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true

owner.  But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust or an equitable lien upon other property of the defendant.  Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 213-14 (internal citations and quotation marks omitted).  The Fifth Circuit addressed the specific requirements for an equitable claim under ERISA by listing three factors for a plaintiff to satisfy when seeking to impose a constructive trust on a sum of money:  (1)  the funds must be specifically identifiable; (2) belong in good conscience to the plan; and (3) be within the possession and control of the defendant beneficiary.  *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 54 F.3d 348, 344 (5th Cir. 2003).  Courts have held that an ERISA claimant could impose a constructive trust in equity on specifically identifiable funds within a beneficiary's control in several instances.  *See*, *e.g.*, *Bombardier*, 45 F.3d at 355 (personal injury settlement funds held in trust by defendant-beneficiary's lawyers and set aside upon the instigation of the ERISA action); *Sereboff v. Mid Atlantic Med. Svcs., Inc.*, 126 S.Ct. 1869 (2006) (personal injury settlement funds held in defendants-beneficiaries' investment accounts and set aside by court injunction upon the instigation of the ERISA action); *IBEW-NECA Sw. Health & Benefit Fund v. Gurule*, 337 F. Supp. 2d 845, 850 (N.D. Tex. 2004) (personal injury settlement funds held in trust by defendant-beneficiary's lawyers and set aside by court injunction upon the instigation of the ERISA action).  Courts have also refused to recognize an ERISA claim in equity on occasion.  *See*, *e.g.*, *Knudson*, 534 U.S. at 210 (2002) (personal injury settlement funds deposited into a California statutory Special Needs Trust for defendant-beneficiary's future medical care were not funds within defendant's control); *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir. 2002) (personal injury

settlement funds for a minor placed in the  Mississippi Chancery Court Registry were not funds within defendant's control).

In the present case, Verizon seeks to impose a constructive trust on the overpayment of $185,826.51, which it asserts "is in Mr. Heinlein's possession and control and resides in a specifically identifiable IRA managed by Charles Schwab."  Verizon Complaint at 4.[1]  Heinlein's Brief argues, however, that Verizon has *not* alleged a claim against specifically identifiable funds for several reasons:  the IRA Verizon named was closed prior to the filing of this suit, and even before the account was closed, the Verizon pension funds were commingled with Heinlein's other assets that collectively underwent losses, gains, withdrawals, fees and other adjustments over time. Heinlein's Brief at 6.

In reviewing whether Verizon has properly stated a claim under ERISA, the court looks to case law under Fed. R. Civ. P. 12(b)(6), for dismissals of actions for failure to state a claim upon which relief can be granted.  A court may dismiss a complaint for such a failure "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  In reviewing a rule 12(b)(6) motion, the court must accept all well-pleaded

---

[1]Verizon's original complaint sought to impose a constructive trust on the overpayment amount, "wherever it may be found, and to receive equitable restitution in the same amount to recoup the assets that rightfully belong to the Plan."  Verizon's amended complaint, however, seeks a constructive trust on a particular Individual Retirement Account ("IRA"), "last four digits being 8854," held by Charles Schwab under Heinlein's control and direction.  The court notes that these additional facts pleaded in Verizon's amended complaint distinguish this case from a nearly identical claim Verizon brought against another retired employee for overpayment of pension funds that was dismissed by another court in this district for lack of personal jurisdiction.  In *The Verizon Employee Benefits Committee v. Adams* , Judge Barbara M. Lynn found that because Verizon failed to identify as specific *res*, such as a bank account or trust, where the overpayment could be found, it had failed to state an *equitable* claim under ERISA, making the national service of process provision inapplicable against the out-of-state defendant in that case.  Case No. 3:05-CV-1793-M, 2006 WL 66711 (N.D. Tex. Jan. 11, 2006) (emphasis added).

**Memorandum Opinion and Order–Page 9**

facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowery v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Courts will not strain to find inferences favorable to the plaintiff and will not accept conclusory allegations, unwarranted deductions or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has stated a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

In this case, Verizon has, on the face of its complaint, alleged that the funds upon which it seeks a constructive trust (1) are specifically identifiable and held within a particular IRA, (2) belong in good conscience to the Plan, and (3) are within the possession and control of Heinlein. Verizon Complaint at 3. While Heinlein's Brief and his affidavit suggest that the funds either no longer exist, or they do not exist in the form identified by Verizon, the court cannot consider those allegations, as they are not part of Verizon's complaint, or the documents attached to Verizon's

**Memorandum Opinion and Order–Page 10**

complaint.  *See Collins*, 224 F.3d at 498-99.  In all of the cases cited above, where a court concluded that the plaintiffs either stated an equitable claim under ERISA, or that they did not, the parties did not dispute the identification or existence of the funds upon which the plaintiffs sought to impose a constructive trust.  Here, Heinlein disputes the facts Verizon has alleged in its complaint to form the basis for a valid equitable claim under ERISA.  Under such circumstances, the court must limit its analysis to whether the complaint states a valid cause of action, when viewed in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's favor.  *See Lowery*, 117 F.3d at 247.  Furthermore, in a dispute over personal jurisdiction, conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff.  *See Bullion*, 895 F.2d at 217.  Heinlein's contradictory facts belong in a motion for summary judgment.  This court is not inclined to convert Heinlein's motion for dismissal for lack of personal jurisdiction into such a summary judgment motion.  Accordingly, the court finds that Verizon has stated a legally cognizable claim under ERISA, and Heinlein's Motion to Dismiss on the ground that ERISA's national service of process provision is inapplicable in this case is **denied**.

### 3.  *Statute of Limitations*

In a one-paragraph argument, Heinlein's Brief states that Verizon's Complaint fails to state a claim that is not barred on its face by the applicable statute of limitations.  Heinlein's Brief at 10. Heinlein reaches this conclusion by applying what he believes to be the "most analogous" state statute of limitations for unjust enrichment, since 29 U.S.C. § 1132 does not provide a statute of limitations.  *Id.*  The statute of limitations for unjust enrichment is two years in Texas and three years in Maryland.  Heinlein points out that the alleged overpayment was made in September 2002, but this action was not filed until October 29, 2005, more than three years later and beyond the

analogous state statute of limitations for either Texas or Maryland. *Id.* Verizon responds by pointing out that a statute of limitations defense is not properly asserted in a motion to dismiss unless "the complaint affirmatively shows that the claims are time-barred," which its complaint does not because it claims to have discovered the alleged overpayment on April 12, 2005. Verizon's Response at 24-25 (quoting *Delhomme v. Caremark RX, Inc.*, 232 F.R.D. 573 579 (N.D. Tex. 2005)). Additionally, Verizon asserts that the "most analogous" state statute of limitations should be four years for breach of contract. Verizon's Response at 23. The court determines that the issue of an applicable statute of limitations depends on a determination of facts not clearly alleged in Verizon's complaint, as well as a finding on the applicable law. As this court has decided to transfer this action to the District of Maryland, it makes no finding on this issue, and will not address it further in this opinion.

### III.  MOTION TO TRANSFER VENUE

Defendant Heinelin also moves, in the alternative, to transfer this case to the District of Maryland where Heinlein resides for the convenience of the parties and in the interest of justice, pursuant to 28 U.S.C. § 1404(a). Heinlein asserts that all of the events underlying this lawsuit occurred in Maryland, and the vast majority of his witnesses resides in Maryland, warranting a transfer to Maryland upon balancing the factors to be considered for transferring cases under § 1404(a). For the reasons stated below, the court agrees.

### A.  Legal Standards

Pursuant to § 1404(a), "a transfer of venue is appropriate where it is convenient for the parties and witnesses, and where the interests of justice so require." *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999). "A motion to transfer venue is addressed

to the discretion of the trial court and will be not be reversed on appeal absent an abuse of discretion." *Id.* (citing *Peteet v. Dow Chemical*, 868 F.2d 1428, 1436 (5th Cir. 1989)). The first issue a district court must address when ruling on a motion to transfer under § 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *In re Horshoe Entm't*, 337 F.3d 429, 432 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003)).

Once this initial determination is made, the court must consider all "relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet*, 868 F.2d at 1436 (quoting C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847 at 370 (1986)). Convenience turns on a number of private and public factors, none of which is dispositive:

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen AG*, 371 F.3d at 203. (internal citations omitted).

A plaintiff's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors strongly favors the moving party, *see Houston Trial Reports, Inc., v. LRP Publ'ns, Inc.*, 85 F.Supp.2d 663, 667 (S.D. Tex. 1999); however, a court may not attribute "decisive weight" to a plaintiff's choice of forum. *In re Horseshoe Entm't*, 337 F.3d at 434. A "[p]laintiff's choice of forum is clearly a factor to be considered, but in and of itself is neither conclusive nor determinative." *Id.* The moving party bears the burden of demonstrating that

a change of venue is warranted. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Carlile v. Continental Airlines, Inc.*, 953 F.Supp. 169, 170 (S.D. Tex. 1997).

## B.  Analysis

In this case, venue would undoubtedly be proper in Maryland, as Heinlein resides in that district.  *See* 28 U.S.C. § 1391(b); 29 U.S.C. § 1132(e)(2).  Since this action could have been originally filed in the District of Maryland where Defendant resides, the court now considers the relevant private and public factors to determine whether the action should be transferred there.[2]

## 1.  Private factor (1):  the relative ease of access to sources of proof

Heinlein argues that Maryland would be a more convenient forum in terms of access to proof "since most, if not all, of the parties and their respective employees reside and/or work in Maryland."   Further, he claims that Verizon's claim did not arise out of any connection with Texas, other than that some of the administration of the Plan was delegated to personnel in Texas.  Heinlein's Brief at 8.  On the other hand, Verizon asserts that "most, if not all, of the documents for this matter" are located here in Texas, as are its witnesses.  Verizon's Response to Defendant's Motion to Dismiss for Lack of Jurisdiction or, Alternatively, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Verizon's Response") at 12.

This factor has waned in importance, since modern advances in technology will likely give both parties equal access to the sources of proof in this case.  *See*, *e.g.*, *Mohamed v. Mazda Motor*

---

[2]The court notes at the outset of this analysis that the parties did not use the exact same factors applied by the court when they briefed the issue of transfer.  Instead, the parties listed eight similar factors ordered differently: (1) the convenience of the parties, (2) the convenience of material witnesses, (3) the availability of process to compel the presence of unwilling witnesses, (4) the costs of obtaining the presence of witnesses, (5) the relative ease of access to sources of proof, (6) calendar congestion, (7) where the events in issue took place, and (8) the interests of justice, in general.  As their arguments under each of these factors fit seamlessly within the eight public-private factors cited by this court, this analysis will cite to the appropriate arguments from each party's brief, and apply them accordingly.

**Memorandum Opinion and Order–Page 14**

*Corp.*, 90 F.Supp.2d 757 (E.D. Tex. 2000).  The nature of this case suggests that the bulk of the proof will come in the form of documents, which can be readily exchanged between parties through discovery.  To the extent that the parties require proof from live sources, both have submitted names of potential witnesses located in their respective, preferred jurisdictions.  Accordingly, Defendant has failed to carry its burden in establishing that this factor weighs in favor of transfer.

### 2. *Private factor (2): the availability of compulsory process to secure the attendance of witnesses*

Heinlein asserts that, in order to defend this cation, he will need to compel the presence of unwilling witnesses who have material and necessary information, but are located in the District of Maryland.  Heinlein's Brief at 8.  In support of his contentions regarding the use of witnesses, both willing and unwilling, Heinlein included in his affidavit a chart listing at least seven witnesses in the Maryland area whom he expects to call, and describing their role in this action.  Heinlein Affidavit at 4.   As Heinlein points out, such witnesses would be beyond the reach of process of this court.  Heinlein's Brief at 8.  Verizon argues that Heinlein has not shown which witnesses must be compelled to testify, or that their testimony would be material.  Verizon's Response at 16, 18.

This court believes this factor weighs slightly in Heinlein's favor.  While Heinlein has not identified which of his witnesses will testify willingly versus unwillingly, and what their testimony will include, the court is satisfied that Heinlein has asserted a compulsory counterclaim in this action that, necessarily, makes the testimony of some of his potential witnesses material.  Heinlein's counterclaim alleges that if Verizon's claims in this action are true, Verizon breached its fiduciary duty to him and other early retirees in the Maryland area by misrepresenting their prospective retirement benefits to them when it presented them with early retirement packages.  Defendant's Original Answer at 5-6.  Viewing Heinlein's complaint in the light most favorable to him, his

counterclaim arises out of the same transaction or occurrence, is compulsory in nature, and may require the testimony of his former manager at the time of his retirement and other Verizon early retirees, as Heinlein has identified them in his affidavit.[3]  If any of these potential witnesses is unwilling to testify, this court lacks the jurisdiction to compel their attendance.  Conversely, Verizon asserts that this "dispute centers on an accounting error," which it plans to prove by the testimony of two current employees working in Verizon's Texas office, one of whom provided an affidavit to support Verizon's Response.  Verizon's Response at 17-18.  Thus, this court believes that none of Verizon's witnesses is unwilling, and would not require service of process to ensure their attendance at trial in Maryland if this case is transferred to that district.  Verizon's Response cites authority to support its proposition that, to prevail on this factor, Heinlein must provide evidence that certain witnesses will have to be compelled, the details of their expected testimony, and how that testimony would be material to the action.  *See* Verizon's Response at 16, 18.  None of the cited authorities, however, is binding upon this court.  Equally persuasive, non-binding authority from other courts points out that 28 U.S.C. § 1404(a) does not require a movant to provide detailed evidence showing the necessity of a transfer in order to be entitled a transfer.  *See*, *e.g.*, *Hill v. Under Mississippi Towing Corp.*, 141 F. Supp. 692, 695 (D.C. Minn. 1956) ("[T]he names of the witnesses and a general statement of their testimony should be given to support a motion for change of venue. However, this is not a requirement sine qua non.").  As one factor among many the court must

---

[3]Verizon asserts that Heinlein's counterclaim is improper or otherwise barred under 29 U.S.C. § 1132(a)(3).  Verizon's Original Answer to Counter-Plaintiff's Original Counterclaim at 3.  Verizon has not moved to dismiss Heinlein's counterclaim on these grounds, and the court sees no evidence attached to Heinlein's pleadings that would invalidate his counterclaim.  Thus the court must view the counterclaim in the light most favorable to Heinlein, and accept all well-pleaded facts in the counterclaim as true.  *See Baker*, 75 F.3d at 196; *Lowery*, 117 F.3d at 247.

**Memorandum Opinion and Order–Page 16**

consider when weighing the appropriateness of transfer to another district, the court believes this factor weighs in Heinlein's favor.

### 3.  Private factor (3):  the cost of attendance for willing witnesses

Heinlein contends that the expense of bringing willing witnesses to Texas "will be great and will entail a significant loss of time on the part of the witnesses."  Heinelin's Brief at 8.  As an example, Heinlein contends that his potential witnesses for his counterclaim include the approximately sixty former employees in Maryland who took Verizon's offer of early retirement as he did, based on Verizon's representations to them of their now, allegedly, incorrect benefits calculations.  *Id.*  Verizon contends that these witnesses are not material, or that their testimony can be presented through stipulation of the parties, documents, or deposition testimony.  Verizon's Response at 19.

In light of the potential witnesses proffered by both parties, this court believes the cost of attendance for willing witnesses falls much more heavily on Heinlein's witnesses than on Verizon's witnesses.  As the court noted above, Heinlein's counterclaim is compulsory, making the testimony of some of these proposed witnesses, necessarily, material.  Heinlein's affidavit lists these potential witnesses as retirees living in the Maryland area.  Heinlein Affidavit at 4.  Conversely, Verizon has named two employees in its Texas office who will testify as to the alleged accounting error in this case.   Verizon's Response at 17-18.  Presumably, these employees testifying on Verizon's behalf will not have to take time off from work if called upon to testify in that district.  The court will not transfer a case when it simply shifts costs from one party to another.  *Salem Radio Representatives, Inc. v. Can Tel Market Support Group*, 114 F. Supp. 2d. 553, 558 (N.D. Tex. 2000).  The court does consider, however, the cost of attendance for the willing *witnesses* to be a relevant factor in a

decision to transfer.  In this case, the court believes Heinlein's proposed Maryland witnesses bear a much heavier cost and burden if asked to attend proceedings in Texas than Verizon's Texas witnesses would bear if asked to attend proceedings in Maryland.  Accordingly, this factor weighs in favor of transfer to Maryland.

### 4.  Private factor (4): all other practical problems that make trial of a case easy, expeditious and inexpensive

Heinlein states that he is a retiree of modest means suffering from cancer and does not travel away from home because of his poor health.  Heinlein's Brief at 9; Heinelin Affidavit at 3.   In fact, Heinlein states that he has had two surgeries for his conditions in the past year, and it would be "extremely difficult" for him to travel because of his health.  Heinlein Affidavit at 3.  If required to defend this action in Texas, Heinlein asserts he and his wife "will be forced to travel to Texas, likely on multiple occasions, and at great inconvenience and expense."  Heinlein's Brief at 9.  Verizon responds that "Mr. Heinlein might bear some additional costs and inconvenience by this case pending in Texas rather than his home state of Maryland," but suggests that the burden will not be drastic, as they are willing to conduct his deposition in Maryland, or "to cooperate to find a trial date that will alleviate any inconvenience Mr. Heinlein might bear in traveling to Texas."  Verizon's Response at 13.

The court finds Verizon's responses inadequate to overcome the great weight tipping the balance of this factor in favor of transfer.  In light of Heinlein's condition, the burden on him to defend this action in Texas involves more than mere time away from home, or the expenses of travel.  Verizon's response completely ignores Heinlein's assertion that the physical act of traveling to Texas will burden his health, which has already been weakened by cancer and two surgeries in

the past year.  Accordingly, the court finds this factor weighs heavily in favor of transfer to Maryland.

### 5. Public factor (1): the administrative difficulties flowing from court congestion

Heinlein asserts that calendar congestion favors the District of Maryland, since it had 3,262 cases pending for the twelve-month period ending March 31, 2004, while this district had 4,328 cases pending in that same period.  Heinlein's Brief at 9.  Verizon points out, however, that the average median time for disposition of civil cases in this district is slightly shorter than in Maryland. Verizon's Response at 20; n.104; Appendix 49-50.  Accordingly, the court finds this factor does not weigh in favor of transfer, because Heinlein has failed to show a clear difference in administrative difficulties between these two districts flowing from calendar congestion.

### 6. Public factor (2): the local interest in having localized interests decided at home

Heinlein argues that this action would be more appropriately tried in Maryland, since the events giving rise to the dispute took place in the District of Maryland, where Heinlein worked for Verizon. Heinlein's Brief at 9.  Verizon argues that the accounting error that occurred in calculating Heinlein's pension benefits occurred in this district, and that Heinlein's receipt of and maintenance of the funds at issue are the only occurrences taking place in Maryland.  Verizon's Response at 20.

The court finds that this factor weighs in favor of transfer, since the events occurring in Texas do not implicate a strong local interest that would favor this action being decided here in Texas, while the events occurring in Maryland do implicate a local interest for that district.  The court sees little local interest in deciding a case based on an accounting error that occurred in Texas in a pension plan administered in Texas for a Delaware corporation with its principal place of

business in New York that distributed pension benefits to its employees nationwide. Heinlein's counterclaim alleges that Verizon breached its fiduciary duty to some sixty former employees in the Maryland area, implicating an interest for Maryland to have that counterclaim decided in Maryland. Additionally, Verizon believes that the funds at issue are held by Heinlein in Maryland, and that, even if the original IRA no longer exists, it may trace the funds. Verizon's Response at 10, 11, 20. This contested issue relating to the existence of, or the potential tracing of, funds held by Heinlein in Maryland also implicates a stronger local interest for Maryland than Texas. Accordingly, this factor favors a transfer to Maryland.

**7. *Public factors (3), (4): the familiarity of the forum with the law that will govern the case; the avoidance of unnecessary problems of conflict of laws of the application of foreign law***

These related factors do not weigh in favor of transfer, since the parties claims are based on federal question jurisdiction, under 28 U.S.C. § 1331 and 29 U.S.C. §§ 1132(a)(3), (e)(1). All federal district courts have similar familiarity with the law governing the case, and no conflict of laws applies.

**8. *Interest of justice***

Separate from the eight private-public factors relating to convenience, the court must also consider whether transfer would serve the interest of justice. *In re Volkswagen AG*, 374 F.3d at 203; 28 U.S.C. § 1404(a). In this case, the court believes the interest of justice is better served by transferring this case to the District of Maryland. Verizon has made clear that "[t]his dispute centers on an accounting error," one that its own Plan administrators made. *See* Verizon's Response at 17; Verizon Complaint at 3. The Fifth Circuit has articulated "grave misgivings" in holding that ERISA's national service of process grants every federal court personal jurisdiction over any

**Memorandum Opinion and Order–Page 20**

defendant with minimum contacts to the United States.  *See Bellaire*, 97 F.3d at 826.  Taking the totality of the circumstances into consideration, the court believes it offends the interest of justice to hale Heinlein to this distant forum, a forum with which he has no minimum contacts,  in order to defend himself in an action arising from Verizon's mistake.  Although this court is bound by Fifth Circuit precedent to hold that it *may* exercise personal jurisdiction over a non-resident defendant in an ERISA action, it may also decline to exercise that right when it deems a transfer appropriate for the convenience of the parties and in the interest of justice.

Verizon argues that the interest of justice and judicial economy favor keeping this case in this district, because it currently has some twenty cases pending in this district that "all stem from similar accounting errors; [and] all are likely to revolve around the same set of facts and laws."[4] Verizon asserts that, in such a situation, a "transfer would defeat the interests of justice by unnecessarily duplicating the expenses of the parties and the courts."  Verizon's Response at 22 (quoting *Verizon Employee Benefits Comm. v. Fleming*, No. 3:05-CV-1244 at *6 (N.D. Tex. Nov. 21, 2005)).  This court disagrees.  The court in *Fleming* cited to another case for the proposition that considerations of judicial economy and efficiency "support a policy of having substantially similar matters litigated before the same tribunal."  *Fleming*, No. 3:05-CV-1244 at *6 (quoting *Sundance Leasing Co. v. Bingham*, 503 F. Supp. 139, 140 (N.D. Tex. 1980)).  In *Sundance*, the court granted a motion to transfer because the same parties were adversaries in similar actions pending in two different districts, and one party had moved to transfer *and* to consolidate.  *Sundance Leasing Co.*, 503 F.Supp. at 140.  Here, the twenty-some pension-overpayment cases pending in the Northern

---

[4]Verizon points out  in a footnote that it has actually filed a total of thirty-six of these cases in the Northern District of Texas, of which twenty remain pending.  Verizon's Response at 2, n.2.

District of Texas have only one party in common: Verizon.  None of the defendants named in those suits is identical.  Thus, none of these twenty cases is a candidate for consolidation with a similar case, and the public saves nothing in terms of judicial economy by retaining this case in the Northern District, as all twenty actions must be litigated separately.  Only Verizon stands to save money by litigating all of its claims in one district.  As Verizon admits that these suits arise from mistakes made by its own Plan administrators, this court finds Verizon's arguments for "judicial economy" unpersuasive.

In summary, of the eight private-public factors relevant to convenience, four weighed in favor of transfer to the District of Maryland, while the other four did not.  Additionally, the court finds that the interest of justice would be better served by transferring this action to Maryland. Accordingly, this court determines that, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and in the interest of justice, this action should be transferred to the District of Maryland; therefore, the court **grants** Heinlein's alternative Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

## IV.  CONCLUSION

For the reasons stated herein, the court determines that it has personal jurisdiction over Defendant Heinlein, pursuant to the national service of process provisions of 29 U.S.C. § 1132(e)(2). Further, the court finds that the national service of process provisions apply in this case, because Verizon has stated a legally cognizable claim under ERISA.  While this court *may* exercise personal jurisdiction over Defendant Heinlein, it determines that a transfer of venue is appropriate under 28 U.S.C. § 1404(a), for the convenience of the parties and in the interest of justice.   Accordingly, the court **denies** Defendant's Motion to Dismiss for Lack of Jurisdiction; **grants** Defendant's alternative

Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a); and hereby **transfers** this action to the District of Maryland.  Additionally, the court **denies as moot** the parties' Joint Motion for Extension of Pretrial Deadlines and Trial Date.  The clerk of the court **shall effect** the transfer of this action in accordance with the usual procedure.

**It is so ordered** this 8th day of November, 2006.


Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order–Page 23**